CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 03 2016
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

PHOENIX PACKAGING, )
OPERATIONS, LLC, et al., )
    Plaintiffs, ) Civil Action No. 7:15cv569
)
v. )
) By: Michael F. Urbanski
M&O AGENCIES, INC., ) United States District Judge
et al., )
)
    Defendants. )

## MEMORANDUM OPINION

In this commercial health insurance dispute, Plaintiff Phoenix Packaging Operations, LLC ("Phoenix") alleges it hired M&O Agencies, Inc. d/b/a/ The Mahoney Group ("Mahoney") in 2013 to serve as a health insurance broker and consultant. After deciding to self-insure, Phoenix alleges it hired Tall Tree Administrators, LLC ("Tall Tree") to administer a self-insurance trust and Gerber Life Insurance Company ("Gerber") to provide stop loss insurance. Plaintiff Roberto Richards ("Richards") is the trustee of Phoenix's self-insurance healthcare trust (the "Trust"). During negotiations for renewal of the stop loss coverage, a dispute arose over certain unpaid claims. As a result, Phoenix and Richards (collectively "Plaintiffs") brought suit in Pulaski County Circuit Court, which was subsequently removed to federal court. ECF No. 1.

Count I alleges that Mahoney breached its contract with Phoenix by failing to acquire for Plaintiffs a stop loss insurance policy with Gerber for the 2014-15 coverage year. Count II alleges Mahoney engaged in professional negligence by failing to procure stop loss insurance for the 2014-15 coverage year, instructing Gerber and Tall Tree to cut off communications with Phoenix, failing to timely notify Phoenix of a stop loss insurance lapse, and advising Phoenix to forego payment of claims to secure lower premiums for the subsequent coverage period. Counts III and IV allege Mahoney committed constructive fraud and fraud in the inducement by representing that

1

negotiations with Gerber regarding stop loss coverage for the 2014-15 coverage year were going well and completed. Count V alleges Tall Tree breached its contract with Phoenix by representing that Gerber would reimburse claims paid by the Trust after October 1, 2014. Counts VI and VII allege Tall Tree engaged in constructive fraud and fraud in the inducement by advising Phoenix that Gerber would reimburse claims paid by the Trust after October 1, 2014.

Pursuant to Fed. R. Civ. P. 12(b)(6), Mahoney moves to dismiss Counts I, II, III, and IV, ECF No. 5, and Tall Tree moves to dismiss Counts VI and VII, ECF No. 20. After a hearing on these motions, Mahoney filed a motion craving oyer or, in the alternative, to amend its motion to dismiss, seeking to incorporate certain documents into their motion to dismiss. ECF No. 46.

As preliminary matter, the court will consider Mahoney's motion craving oyer, or in the alternative, to amend its motion to dismiss. ECF No. 46. The court will then recount the standard of review and the allegations before addressing the merits of Tall Tree and Mahoney's Fed R. Civ. P. 12(b)(6) motions.

I.

Mahoney craves oyer of any records which could bear on the contractual relationship between Mahoney and Plaintiffs, or in the alternative, moves to amend its motion to dismiss to incorporate contractual documents between Phoenix and Mahoney. ECF No. 46. Attached to the motion are a document titled "Agent/Broker Record of Change" and a letter written from Phoenix to Anthem confirming that Mahoney agreed to serve as Phoenix's exclusive insurance Agent/Broker of Record. ECF Nos. 46–1, 46–2. Phoenix references an Agent/Broker Record of Change, dated July 26, 2013, as the contract breached by Mahoney, ECF 1–1, ¶¶ 13, 47-48. Neither Plaintiffs' complaint, ECF No. 1–1, nor Mahoney's motion to dismiss, ECF No. 20, contain a copy of the Agent/Broker Record of Change. In ruling on a motion to dismiss, the court may consider

documents attached to briefs that "are integral to the complaint and authentic." Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The Agent/Broker Record of Change is an integral part of Plaintiffs' claims against Mahoney. The copy is signed and dated July 26, 2013 and comports with Phoenix's description in the complaint, indicating the copy is authentic. ECF No. 46–1. Furthermore, consideration of the Agent/Broker Record of Change will aid the court in determining whether Phoenix has stated a contract claim against Mahoney. The court will **GRANT** Mahoney's motion to amend its motion to dismiss, ECF No. 46, and consider the Agent/Broker Record of Change (hereinafter the "ROC") ECF No. 46–1, in assessing Mahoney's motion to dismiss. Because the letter, ECF No. 46–2, is not integral to Mahoney's motion, the court will not consider it.

## II.

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in

3

the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted). Thus, in order to survive a motion to dismiss, the complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678-79, and Gooden v. Howard Cnty., Md., 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III.

Phoenix operates a commercial food packaging plant in Pulaski County, Virginia. ECF No. 1–1, ¶ 1. On July 26, 2013, Phoenix hired Mahoney to serve as Phoenix's "exclusive insurance broker of record." Id. at ¶ 13. Plaintiffs allege that Mahoney's contractual obligations stem from the ROC, id. at ¶¶ 13, 47, and that Mahoney agreed to advise Phoenix on health insurance, procure health insurance for Phoenix employees, and provide ongoing consultation related to such insurance, id. at ¶¶ 14-15. In the summer and fall of 2013, Mahoney advised Phoenix to self-insure. Id. at ¶ 16. Specifically, Mahoney advised Phoenix to create and pay premiums into the Trust that would then pay out employee healthcare claims. Id. at ¶ 17. Mahoney further recommended that Phoenix procure stop loss insurance to cover employee claims in excess of the funds in the Trust. Id. Mahoney suggested that Phoenix hire Tall Tree to administer the Trust and engage Gerber to provide stop loss insurance. Id. at ¶¶ 18-19.

In September 2013, Phoenix formed the Trust and appointed Richards trustee. Id. at ¶ 20. Phoenix hired Tall Tree to administer the Trust and to monitor and process employee claims. Id. at ¶ 21. The agreement with Tall Tree is memorialized in a written and signed agreement (the "Tall

4

Tree Agreement"). Id. at Exhibit 1[1]. The 2013-14 stop loss agreement with Gerber provided aggregate stop loss and specific stop loss insurance. Id. at ¶¶ 23-24. Aggregate stop loss coverage of $1,000,000 took effect only if the total employee health care claims exceeded $1,297,095 for the 2013-14 coverage year. Id. at ¶ 25. The specific stop loss applied to those employees whose health care costs exceeded $100,000 for the 2013-14 coverage year. Id. at ¶ 26. The specific stop loss policy covered up to $2,400,000 of expenses for individual employees to the extent their claims exceeded $100,000. Id.

On July 30, 2014, Mahoney represented that the self-insurance plan was succeeding and discussions with Gerber for the coverage year beginning October 1, 2014 were going well. Id. at ¶ 28. On August 12, 2014, Mahoney informed Phoenix of Gerber's renewal proposal for the 2014-15 coverage year. Id. at ¶ 29. Phoenix approved the renewal proposal on the same day. Id. On September 8, 2014, Mahoney advised Phoenix that Tall Tree required an additional $135,462 to satisfy employee claims as the Trust lacked sufficient funds. Id. at ¶ 30. On September 9, 2014, Mahoney advised Phoenix that it need not pay outstanding health insurance claims. Id. at ¶ 31. Tall Tree similarly advised Phoenix on September 10, 2014, explaining that Gerber would pay all claims accruing on after May 1, 2014 pursuant to the aggregate stop loss provision for coverage year 2014-15. Id. at ¶ 32. On September 12, 2014, Tall Tree advised Phoenix not to pay the outstanding claims or seek reimbursement until October, as doing so earlier would jeopardize the renewal process with Gerber. Id. at ¶ 34.

On October 13, 2014, Mahoney informed Phoenix that negotiations with Gerber to set rates for the policy period beginning on October 1, 2014 were ongoing. Id. at ¶ 36. Mahoney also informed Phoenix that Gerber conditioned renewal of the stop loss coverage on Phoenix providing

---

[1] The Agreement is attached to the initial complaint at ECF No. 1–1. However, ECF No. 1–1 is incomplete. ECF No. 44 contains a complete version of the Tall Tree Agreement.

5

onsite medical staff. Id. at ¶ 37. On October 22, 2014, Mahoney informed Phoenix that Gerber had not agreed to a renewal for the 2014-15 coverage year, but that an amended policy was forthcoming. Id. at ¶ 38. On October 24, 2014, Mahoney advised Phoenix that Gerber refused to renew stop loss coverage unless Phoenix paid all outstanding claims from the 2013-14 coverage year. Id. at ¶ 39. Though Phoenix incurred out of pocket expenses related to outstanding claims near the end of the 2013-14 coverage year, Phoenix received no reimbursement under the stop loss contract with Gerber. Id. at ¶ 40.

On November 3, 2014, Phoenix terminated its relationship with Mahoney and hired a new health insurance broker. Id. at ¶ 41. Phoenix learned that Mahoney had instructed both Gerber and Tall Tree not to engage in direct communication with Phoenix. Id. at ¶ 42. On December 19, 2014, Phoenix procured stop loss coverage from Gerber for the 2014-15 coverage year. Id. at ¶ 43. Gerber conditioned the renewed policy on Phoenix paying approximately $1,200,000 in unpaid claims. Id. at ¶ 44. Additionally, the renewed insurance policy contained a $1,300,000 exclusion for claims arising during the 2014-2015 coverage year for a specific employee. Id. at ¶ 45. In this lawsuit, Phoenix seeks recovery of its actual loss of $2,500,000 plus $1,000,000 in punitive damages.

Mahoney argues that Count I should be dismissed because the ROC did not impose on Mahoney a duty to procure stop loss insurance for the 2014-15 coverage year. ECF Nos. 21, 2-3; 31, 3-4; 46, 1-2. Mahoney argues Virginia's economic loss rule bars Counts II, III, and IV. ECF Nos. 21, 4-6; 31, 4-8. Tall Tree argues that Counts VI and VII should be dismissed as (1) barred by the economic loss rule, (2) not pled with specificity, and because (3) they relate to a statement about future actions. ECF No. 6, 2-9. Tall Tree also argues that Count VII fails to allege the statement at issue induced any action by Phoenix. Id. at 6-7. Tall Tree argues that in the event Count VI and VII are not dismissed, Plaintiffs' claims for punitive damages in Counts VI and VII should be

6

limited to $350,000 and their claims for attorney's fees in Counts VI and VII dismissed. Id. at 10-12.

For the reasons that follow, the court will grant in part Mahoney's motion to dismiss, ECF No. 20, merging Counts I and II, and dismissing Counts III and IV. The court will grant in full Tall Tree's motion, ECF No. 5, dismissing Counts VI and VII.

## IV.

Count I, II, III, and IV, each of which Mahoney seeks dismissal, are discussed in turn below.

### A.

Mahoney moves to dismiss Count I for failure to state a claim for breach of contract. To state a claim for breach of contract, Plaintiffs must allege: (1) a legally enforceable obligation; (2) violation or breach of that obligation; and (3) injury to damage to the plaintiff caused by breach of the obligation. Filak v. George, 267 Va. 612, 619, 594 S.E. 2d 610, 614 (2004). Plaintiffs argue that Mahoney breached the ROC by failing to procure stop loss insurance for the 2014-15 coverage year. Mahoney counters that the ROC serves to identify Mahoney as Phoenix's agent, but does not impose an affirmative obligation to procure specific coverage.

Rebecca Chang and Roberto Richards, on behalf of Mahoney and Phoenix respectively, signed the ROC, notifying Anthem that Mahoney served as Phoenix's health insurance agent. ECF No. 46–1. The ROC included the following language to which Rebecca Chang, on behalf of Mahoney, agreed:

> As the new agent, I accept the assignment of the above named group/individuals as their Agent of Record. I further certify that all the information shown above is correct and complete to the best of my knowledge. I also understand that commissions will not be payable until the effective date of the Agent of Record change per established guidelines and the group/individual will not be visible in my on-line book of business until the effective date of the change.

Id.

To be sure, the ROC does not specify that Mahoney procure stop loss insurance for the 2014-15 coverage year. Rather, the ROC confirms the agency relationship. While the ROC does not state that Mahoney is obliged to procure any specific insurance products for Phoenix, Mahoney undertook certain duties as Phoenix's agent. Thus, while the express terms of the ROC may not have been breached by Mahoney's failure to procure stop loss coverage, such failure may constitute a breach of the obligations implicit in the agency relationship reflected in the ROC.

In Count II, Phoenix alleges professional negligence. A professional negligence action, though sounding in tort, is actually an action for breach of contract. Shipman v. Kruck, 267 Va. 495, 501, 539 S.E. 2d 319, 322 (2004); Comptroller of Virginia ex. rel. Va. Military Inst. v. King, 217 Va. 751, 759, 232 S.E. 2d 895, 899-900 (1977); McConnell v. Servinsky Eng., PLLC, 22 F. Supp. 3d 610, 616 (W.D. Va. 2014)(explaining that no professional duty is owed to a client absent a contract). But see Cincinnati Ins Co. v. Ruch, 940 F. Supp. 2d 338, 346 (E.D. Va. 2013)(holding that Virginia law recognizes an *extra contractu* common law duty of care on professionals).

In essence, Counts I and II allege the same thing, breach of the insurance agency agreement by Mahoney through failure to procure stop loss insurance for the 2014-15 year. Because Counts I and II are duplicative, the court will enter an order that they be merged into one count, hereinafter referred to as "Count II," asserting that Mahoney breached the agency agreement by failing to procure stop loss insurance for the 2014-15 year.

## B.

Mahoney argues Virginia's economic loss rule precludes Counts II, III, and IV.

### 1.

Virginia's economic loss rule limits the extent to which tort actions give rise to damages for failed economic expectations. Virginia courts have applied the economic loss rule to limit tort claims in two distinct ways, considering both the source of duty and the existence of privity. See,

8

e.g., Branin v. TMC Ent., LLC, 832 F. Supp. 2d 646, 654-55 (W.D. Va. 2011). Considering first the source of duty, courts have held that where a contract alone provides the basis for a duty, the failure to perform the duty cannot give rise to a tort action. Filak, 267 Va. at 618, 594 S.E. 2d at 613 ("when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses"); Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558-59, 507 S.E. 2d 344, 347 (1998); see also Sensenbrenner v. Rust, 236 Va. 419, 425, 374 S.E. 2d 55, 58 (1988)(holding tort law provides no remedy for disappointed economic expectations contemplated in an agreement.) However, where the conduct that gives rise to the breach of contract simultaneously violates a duty that exists independently of the contract, that conduct may give rise to claims in both contract and tort. Richmond Metro. Auth, 256 Va. at 558, 507 S.E. 2d at 347.

Second, lack of privity with a defendant will preclude a plaintiff from pursuing economic damages in negligence actions. Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 316 (4th Cir. 1998); Redman v. Brush and Co., 111 F.3d 1174, 1182 (4th Cir. 1997)("a plaintiff who is not in privity of contract with the defendant cannot maintain an action for negligence... based on purely economic damages"); Branin, 832 F. Supp. 2d at 654-55; Crawford v. Deutsche Bank AG, 244 F. Supp. 2d 615, 617 (E.D. Va. 2003).

Taken together, the privity and source of duty applications strike a balance between tort law and contract law. On the one hand, economic losses are not recoverable from plaintiffs having no contractual relationship with a defendant. On the other hand, plaintiffs cannot impose tort liability on defendants who have assumed a duty only through contract. Tort claims generally only protect "persons and property from losses resulting from injury." Sensenbrenner, 236 Va. at 425, 374 S.E. 2d at 58. However, the economic loss rule leaves open the possibility of recovering economic damages through a negligence claim in limited circumstances. Where the parties are in contractual

9

privity and their relationship gives rise to duties not imposed by the explicit terms of the contract but by common law, a negligence action may lie.

Count II alleges professional negligence. As noted, an action for negligence "in the performance of professional services, while sounding in tort, is an action for breach of contract." Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E. 2d 398, 400 (1976). Contractual relationships between professionals and clients give rise to professional duties, irrespective of the terms contained in the contract. McConnell, 22 F. Supp. 3d at 616. The duty to adhere to professional standards is implicit in the contract. Id.; see also Surf Realty Corp. v. Standing, 195 Va. 431, 442-43, 78 S.E. 2d 901, 907-08 (1953). Because Count II is, in essence, a breach of contract claim, it is not barred by the economic loss rule, which applies to tort claims.

In performing insurance services for Phoenix, Mahoney owed a professional duty of care. McConnell, 22 F. Supp. 3d at 316. Plaintiffs allege that by failing to procure stop loss insurance for the 2014-15 coverage year, instructing Gerber and Tall Tree to cut off communications with Phoenix, failing to timely notify Plaintiffs of the stop loss insurance lapse, and advising Plaintiffs to forego payment of claims to secure lower premiums for the subsequent coverage period, Mahoney breached its professional standard of care. ECF No. 1–1, ¶¶ 59-60. Phoenix has sufficiently alleged the (1) the existence of an agency relationship that gave rise to duty to meet professional standards, (2) Mahoney breached those standards, and (3) the breach was a proximate cause of the claimed damages. As such, Count II may proceed.

Further, because the professional negligence claim is a contract claim, Plaintiffs are limited to contractual damages. O'Connell v. Bean, 263 Va. 176, 181, 556 S.E. 2d 741, 743 (2002). Therefore, Plaintiffs cannot seek punitive damages in Count II.

## C.

Mahoney also argues that the economic loss rule bars Counts III and IV, alleging constructive fraud and fraud in the inducement.

Specifically, in Count III, Phoenix alleges that Mahoney misrepresented that negotiations with Gerber concerning the stop loss renewal were going well when Mahoney knew or should have known that Gerber intended to add preconditions to the coverage. ECF No. 1–1, ¶ 66. These facts also form the basis for Count IV. Id. at ¶ 78. Without explanation or elaboration, both Counts III and IV state that the alleged misrepresentation was separate from Mahoney's contractual obligations. These conclusory assertions are inconsistent with the factual allegations that Mahoney served as Phoenix's insurance broker. No facts are alleged to establish a source of duty outside the agency relationship established in the ROC. See Filak, 267 Va. at 618-19, 594 S.E. 2d at 613-14; Richmond Metro. Auth., 256 Va. at 558-560, 507 S.E. 2d at 347-48. As such, Counts III and IV, alleging intentional torts arising out of a contractual relationship and lacking a foundational independent common law duty, are barred by the economic loss rule.

### V.

Tall Tree's Fed. R. Civ. P. 12(b)(6) motion, ECF No. 5, seeks dismissal of Counts VI and VII. Tall Tree asks that in the event Counts VI and VII are not dismissed, that Plaintiffs' claims for punitive damages be limited to $350,000 and claims for attorney's fees in Counts VI and VII be barred. For the following reasons, Tall Tree's motion will be granted and Counts VI and VII dismissed.

### A.

Plaintiffs allege Tall Tree engaged in constructive fraud when on September 12, 2014, "Tall Tree represented that if Plaintiffs paid claims after October 1, 2014, then they would be reimbursed by Gerber." ECF No. 1–1, ¶ 101. Plaintiffs further allege that this statement violates Section 2, Subsection A and Section 9, Subsection A of the Tall Tree Agreement. Section 2, Subsection A

11

states: "The parties to this [Tall Tree Agreement] shall perform their respective duties in a proper, prompt, and timely manner." Id. at ¶ 90. Section 9, Subsection A reads: "[Tall Tree] agrees to indemnify, defend, and hold harmless [Phoenix Packaging/Trust] for any and all acts or omission of gross negligence or willful misconduct by [Tall Tree], its officers, directors, employees, or agents, whereby [Phoenix Packaging/Trust] is damaged by such acts or omission." Id. at ¶ 91. Though Tall Tree does not move for dismissal of Count V, the source of the duty allegedly violated by Tall Tree will determine whether Plaintiffs' fraud claims survive.

The Tall Tree Agreement took effect on October 1, 2013 and continued until September 30, 2014.[2] ECF No. 44, 4, 7. Therefore, the Tall Tree Agreement was in effect at the time Tall Tree allegedly advised Phoenix that Gerber would reimburse claims paid by the Trust after October 1, 2014. As such, this case presents no claim of fraud in the inducement of the Tall Tree Agreement. Rather it concerns statements made by Tall Tree during the course of its performance under the Tall Tree Agreement to administer claims and perform administrative tasks related to the payment of claims from the Trust. Id. at 4. As noted by Plaintiffs, the Tall Tree Agreement required Tall Tree to perform their duties in a proper fashion. ECF No. 1-1, ¶ 90. The Tall Tree Agreement stipulated that any act or omission of gross negligence or willful misconduct by Tall Tree will result in a contractual remedy in Phoenix's favor. Id. at ¶ 91. Thus, Tall Tree assumed the duty to provide accurate information related to the administration of the Trust through the Tall Tree Agreement. Just as Filak and Richmond Metro Auth., Plaintiffs allege tortious performance of contractual duties resulting in disappointed economic expectations assumed through contract. Therefore, "the law of

---

[2] The Tall Tree Agreement contains a handwritten notation that appears to indicate the Tall Tree Agreement ran through September 30, 2014. ECF No. 44, 8. However, even if the Tall Tree Agreement ran through a date other than September 30, 2014, the contract renewed automatically from year to year, unless specifically terminated. There is no allegation that the Tall Tree Agreement has ever been specifically terminated. As such, the contract was effective on September 12, 2014, when the statements at issue were made.

12

contracts, not the law of torts, provides the remedy for such economic losses." Filak, 267 Va. at 618, 594 S.E. 2d at 613. Accordingly, Count VI will be dismissed with prejudice.

### B.

Count VII for fraudulent inducement relies on the same statement at issue in the constructive fraud claim and likewise fails to state a claim. Tall Tree's statement plainly occurred during the course Tall Tree's performance of duties arising from the Tall Tree Agreement. Compare Abi-Najm v. Concord Condo., LLC, 280 Va. 350, 362-63, 699 S.E. 2d 483, 489-490 (2010)("The fraud alleged by the Purchasers was perpetrated by [defendant] *before* a contract between the two parties came into existence, therefore it cannot logically follow that the duty [defendant] allegedly breached was one that finds its source in the Contracts.") Though Tall Tree may have failed to adequately perform such duties, damages resulting from such a failure are only recoverable through a contract claim. Accordingly, Count VII will also be dismissed with prejudice.[3]

### C.

Finally, because Plaintiffs' only remaining claim against Tall Tree is for breach of contract, Plaintiffs cannot sustain their claim for punitive damages. Kamlar Corp. v. Haley, 224 Va. 699, 706, 299 S.E. 2d 514, 517-18 (1983).

### VI.

Mahoney's Fed. R. Civ. P. 12(b)(6) motion, ECF No. 20, is **GRANTED in part**. Count I and II are merged into a single count, "Count II," for breach of insurance agency contract. Mahoney's motion to dismiss Counts III and IV is **GRANTED** and Counts III and IV are **DISMISSED with prejudice**. Tall Tree's Fed. R. Civ. P. 12(b)(6) motion, ECF. No. 5, is **GRANTED in full**. Counts VI and VII are **DISMISSED with prejudice**. In sum, Count II for

---

[3] Because the court finds Counts VI and VII barred by the economic loss rule, the court need not address Tall Tree's other arguments regarding the dismissal of Counts VI and VII.

13

breach of the insurance agency contract against Mahoney and Count V for breach of contract against Tall Tree survive.

An appropriate Order will be entered.

Entered: 06-03-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge